**Opinion filed May 21, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00128-CR

_____

## BRIAN KIETH HENRICKS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 9th District Court**

**Montgomery County, Texas**

**Trial Court Cause No. 06-02-01200-CR**

### O P I N I O N

Brian Kieth Henricks[1] appeals from a guilty verdict for murder.  We affirm.

*Background Facts*

Henricks lived with his mother Diane Marie MacBird and her husband Robert MacBird.  They got into an altercation on the night of December 4, 2005.  Henricks shot Robert four times, killing him.  Robert also suffered from blunt force trauma to his head.  Henricks and Diane took Robert's body and dumped it in the national forest area, off Calvary Road in Montgomery County.

---

[1]We note that Henricks's middle name is spelled Kieth and Keith in court documents.

The next day, Diane and Henricks met with attorney Jerald Crow, who arranged a meeting with the police at his office. The police arrived at Crow's office and interviewed Diane. Henricks then took the officers to where they had dumped the body and showed the police where he had put the gun that he used to shoot Robert.

Henricks was charged with Robert's murder. Henricks pleaded not guilty and proceeded to a jury trial. The jury found Henricks guilty and sentenced him to fifty years confinement in the Texas Department of Criminal Justice, Institutional Division.

## Issues on Appeal

Henricks raises seven issues on appeal. First, Henricks argues that the trial court erred in allowing testimony regarding Henricks's exercise of his right to retain counsel, testimony regarding his exercise of his right to remain silent, and testimony regarding plea negotiations. Henricks next argues that the trial court erred in admitting character evidence relating to Henricks when his character was never placed in issue. In three issues, Henricks argues that he did not receive a fair trial because the State failed to provide discovery regarding its blood spatter expert. Henricks also argues that the trial court erred in allowing the State to present an in-court demonstration of how the victim was killed. Finally, Henricks argues that the trial court erred in sua sponte adding a deadly weapon finding to the judgment.

## Detective Rogers's Testimony

Detective Marvin Rogers testified that he received an instruction from his lieutenant to go to Crow's office. Detective Rogers testified that Diane and Henricks were present when he arrived. In response to questions regarding what occurred at Crow's office, Detective Rogers testified as follows:

> Q. Were you ever shown or did you ever observe a male?
>
> A. Yes.
>
> Q. Outside of Jerald Crow?
>
> A. Yes.
>
> Q. Were you given that individual's name?

A.    Yes.

Q.    Was that Brian [Kieth] Henricks?

A.    Yes.

[DEFENSE COUNSEL]:  Excuse me, I'm going to object, Your Honor, to anything related to this officer by Mr. Crow.  It would fall under attorney-client privilege and my client's never waived that privilege.

THE COURT:  Overruled.

Q. [PROSECUTOR] Now, at this point, you know it's a murder investigation, correct?

A.    Correct.

Q.    Okay.  Were these two people identified to you as suspects?

A.    At the time, Mr. Henricks was.

Q.    Okay.  And did you at any time ask to speak to these two individuals, Diane Marie MacBird and Brian [Kieth] Henricks?

A.    Yes, I did.

Q.    And were you given permission to speak with either one of them?

A.    I was given permission to speak with Diane MacBird.

. . . .

Q.    Okay.  When you asked to speak with Brian [Kieth] Henricks, what were you told?

A.    His attorney wanted to speak to him at this time.  He wanted to work with him further for possibly further cooperation down the road.

[DEFENSE COUNSEL]:  Objection.  Same objection, Your Honor, attorney-client privilege.

THE COURT:  Overruled.

Q. [PROSECUTOR] This whole encounter at Jerald Crow's office, did Mr. Crow ever indicate to you how these people got to his office?

[DEFENSE COUNSEL]: Objection, again, Your Honor.

[PROSECUTOR]: That's a yes or no. We're not asking for --

THE COURT: Overruled.

[DEFENSE COUNSEL]: Attorney-client privilege.

Q. [PROSECUTOR] Did he indicate how he got there?

A. Yes.

Q. And did he indicate they would cooperate with you fully?

A. Eventually, yes.

Q. And did you ever get any further cooperation?

[DEFENSE COUNSEL]: Objection, Your Honor. Same objection, attorney-client privilege.

THE COURT: Overruled.

THE WITNESS: No.

Q. [PROSECUTOR] Throughout your investigation, back from that date in December of '05, have you ever interviewed Brian [Kieth] Henricks?

A. No.

Q. Have you had a few conversations with him that have been limited to other matters?

A. Yes.

Henricks argues that Detective Rogers's testimony is evidence that Henricks exercised his right to retain counsel and that he followed his counsel's advice and exercised his right to remain silent. Henricks also argues that Detective Rogers's testimony implies that Henricks admitted guilt to his attorney and that he was willing to cooperate in the hopes of negotiating a lighter sentence.

4

To preserve an issue for appeal, a timely objection must be made that states the specific grounds for objection, unless the specific grounds are apparent from the context. TEX. R. APP. P. 33.1(a). A general or imprecise objection may be sufficient to preserve error for appeal if the legal basis for the objection is obvious to the court and to opposing counsel. *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). Preservation of error provides trial courts an opportunity to prevent or cure errors so as to permit the trial to continue to a final conclusion free from attack and reversal on appeal. *Id*. Therefore, an objection must be specific enough so that the trial court can make an informed ruling on the subject matter of the objection. *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). When the objection is not specific and the legal basis is not obvious, then an appellate court cannot reach the merits of the issue on appeal. *Buchanan*, 207 S.W.3d at 775.

Henricks did not object to Rogers's testimony on the ground that it was a comment on Henricks's right to retain counsel or his right to remain silent. Henricks's only objection was to statements made by Crow because these statements were protected by the attorney-client privilege. Attorney-client privilege protects confidential communications between the client and his attorney made for the purpose of facilitating the rendition of professional legal services to the client. TEX. R. EVID. 503 (b)(1). Henricks argues that the objection, while imprecise, was not fatal because the grounds for objection were apparent from the context of the testimony. We disagree. There is nothing in the record that would alert the trial court that Henricks was objecting to a violation of his constitutional rights. Instead, the record indicates that counsel made the objection that he intended to make. Because that objection does not comport with Henricks's complaint on appeal, this issue is not preserved for review. *See Routier v. State*, 112 S.W.3d 554, 586 (Tex. Crim. App. 2003).

Even if the objection was sufficient to preserve error, the trial court did not err in allowing the testimony. To show a violation of Henricks's right to remain silent, the offending language must be of such a character that the jury would necessarily take it as a comment on the defendant's right to remain silent. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is not sufficient that the language might be construed as a comment on the defendant's silence. *Id*. Detective Rogers's testimony did not rise to the level of commenting on Henricks's right to remain silent. Henricks argues the jury could infer from Detective Rogers's testimony that, because

5

Henricks retained an attorney and followed his advice by not talking to Detective Rogers, he must be guilty. However, the testimony must do more than create a possible inference. Detective Rogers testified that he did not interview Henricks during the investigation; however, the testimony does not indicate that Henricks refused to talk to Detective Rogers. In fact, the evidence showed that Henricks cooperated in the investigation by leading the police to the discovery of the body and the gun.

Evidence that an accused retained counsel is not admissible to establish guilt. *Hardie v. State*, 807 S.W.2d 319, 321 (Tex. Crim. App. 1991). But, the fact that Detective Rogers went to Crow's office was not offered as evidence of guilt. Detective Rogers testified that he was asked to go to Crow's office as part of a homicide investigation. Henricks concedes that this testimony and testimony that Henricks was at Crow's office when Rogers arrived is proper. Because this testimony was proper, the State did not impermissibly comment on Henricks's exercise of his constitutional right to counsel.

There was also no testimony regarding plea negotiations. Henricks was cooperating by helping the police find the body and the murder weapon. Henricks's trial strategy was to emphasize this cooperation. Henricks's attorney cross-examined Detective Rogers regarding Henricks's cooperation and his interactions with Crow. There was no testimony about Henricks entering a plea or the offer of a plea if he cooperated. The trial court did not err in allowing the testimony. We overrule Henricks's first issue on appeal.

*Character Evidence*

Henricks argues that evidence of Henricks's character was improperly admitted because his character was never placed in issue. We review the trial court's evidentiary rulings for an abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787,790 (Tex. Crim. App. 2007). As long as the trial court's ruling is within the zone of reasonable disagreement and is correct under any theory of law applicable to the case, it must be upheld. *Id.*

Generally, character evidence is not admissible to show that a person acted in conformity with that character on a particular occasion. TEX. R. EVID. 404(a). However, a character trait of the accused offered by the accused or offered by the prosecution to rebut a character trait offered by the accused is admissible. Rule 404(a)(1)(A). Admissible character evidence can be offered only in the

6

form of reputation or opinion evidence. TEX. R. EVID. 405(a). Specific instances of conduct may be admissible if the person's character is an essential element of a charge, claim, or defense. TEX. R. EVID. 405(b).

Henricks's opening statement raised the issue of self-defense. Henricks attacked the victim's character by stating that Robert was an angry alcoholic. The State objected to this statement. The trial court held that, while Henricks could not attack the victim's character, he could discuss self-defense. Henricks continued his opening statement:

> You will learn during the day of December the 4th, 2005, Robert MacBird was beating Brian's mother. He beat her not once, not twice, but he attacked her three times, three times on December 4th, 2005. This is a case about abuse. It's a case about self-defense, and it's a case about defending your mother.

Henricks concluded his opening statement by saying that he shot and killed Robert in fear for his life and in defense of his mother.

The State called William Allen Srack to testify. Srack testified that he lived in the same subdivision as Henricks and the MacBirds and that they had visited each other's homes. Srack testified about the events of the night of December 4, 2005. Srack testified that Henricks came to his house the night of the shooting and told him that Robert had Diane on the ground and was trying to hurt her. Henricks interfered attempting to help Diane. Srack testified that Henricks told him that Robert had a tire tool and was hitting Henricks and Diane with it.

The State asked for a sidebar and gave notice of its intent to go into Henricks's character. Henricks objected, stating that it was inadmissible specific instances of conduct. The trial court allowed the testimony, stating that the self-defense issue had been raised. The State asked Srack if Henricks had a reputation for being peaceful. Srack testified that he had seen examples of Henricks being aggressive and that his tone of voice was threatening. He further testified that there had been times when Diane had asked him to come to her home to protect her from Henricks.

Henricks's case was based on the defensive theory that Robert was the first aggressor and that Henricks acted in self-defense and in defense of his mother. The State was allowed to rebut that with character evidence that Henricks was aggressive and not protective toward his mother. *See Jones v. State*, 241 S.W.3d 666, 669 (Tex. App.—Texarkana 2007, no pet.). The trial court did not err in

allowing Srack's testimony about Henricks's character. Henricks's second issue on appeal is overruled.

*Expert Testimony on Blood Spatter*

Henricks argues that the State's actions in withholding discovery regarding blood spatter testimony deprived him of a fair trial and that the trial court should not have allowed the evidence or, alternatively, should have granted his motion for continuance.

Upon defendant's request or a trial court's order, the State is required to disclose a list of witnesses it intends to use at trial, photographs, defendant's written statements, letters, accounts, and other evidence material to any matter in the case. TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2008). Evidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006.); *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002). Because exclusion is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution. *Osbourn*, 59 S.W.3d at 816. Determining if the State acted willfully encompasses two factors: (1) whether the prosecutor acted in bad faith in failing to disclose the evidence and (2) whether the defendant can reasonably anticipate the contested evidence. *Wood v. State*, 18 S.W.3d 642, 649-50 (Tex. Crim. App. 2000); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).

In determining whether the State acted in bad faith, we ask the following: (1) whether the defendant established that the State intended to deceive him; (2) whether the State's notice left the defendant adequate time to prepare; and (3) whether the State freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new witnesses. *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd). Similarly, in determining whether the defense could have anticipated the State's witness, we ask the following: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise; and (3) the degree to which the trial court was able to remedy that surprise. *Id*. at 88-89.

Henricks filed a discovery motion, but there is no signed standard discovery order in the record. Henricks attached an unsigned copy of the standard discovery order for Montgomery County

to his motion for new trial. The standard discovery order states that the State must produce a list of anticipated trial witnesses, lab reports, physical evidence, reports of experts, and photographs. The standard discovery order also states that any photographs, diagrams, or models prepared as jury aids are considered work product.

A week prior to trial, the State filed a motion for continuance, stating that lab results regarding blood spatter and DNA would be unavailable until after the scheduled trial date. The trial court granted the continuance. Subsequently, the State filed a discovery response listing Investigator Celestina Rossi as a fact witness.[2] The next day, the State amended its discovery response listing Investigator Rossi as an expert witness in the area of crime scene investigation. Henricks filed a motion for continuance, stating that he had not been provided with some discovery and that DNA results and blood spatter results would not be available until ten days before trial. Henricks argued that the standard discovery order required that discovery be made available at least twenty days before trial. The trial court denied the motion. On the day of trial, the State supplemented its discovery response by adding that Investigator Rossi would testify as a firearms expert, specifically regarding the distance of the firearm from the victim when discharged.

Investigator Rossi testified that she was the lead investigator on the case in charge of collecting evidence at the scene. She also described evidence that was collected at the scene. Henricks stipulated that Investigator Rossi was an expert in the fields of bloodstain pattern analysis – including blood spatter, castoff, and impact – and in the field of firing distances. Investigator Rossi testified that she believed it would aid the jury in understanding her testimony if the jury was permitted to view a PowerPoint presentation. The first part of the PowerPoint presentation consisted of definitions and descriptions of different types and patterns of bloodstains. The second part of the presentation was comprised of photographs that Investigator Rossi took at the scene. Henricks objected, stating that he had no notice of the presentation. The State argued that the PowerPoint presentation was a demonstrative aid that was prepared to aid the jury with Investigator Rossi's testimony. The State also argued that the photographs had been made available to Henricks prior to trial. The trial court allowed the PowerPoint presentation.

---

[2]We note that the State filed its discovery response in compliance with the standard discovery order; therefore, the State cannot rely on the fact that a discovery order was not in effect.

Investigator Rossi testified about each photograph in the presentation describing what type of stain the blood appeared to be: transfer, castoff, or expiratory stain and high, medium, or low velocity stain. The photographs were already entered into evidence. The photographs had measurements written on them regarding the size of the bloodstain. The PowerPoint presentation was not introduced into evidence and is not part of the appellate record.

Henricks asked for the appointment of an expert to rebut Investigator Rossi's testimony regarding blood spatter. The trial court allowed the appointment of an expert, Lou Akin. The trial court allowed Henricks extra time to prepare his expert and to cross-examine Investigator Rossi. Also, at the conclusion of the State's case-in-chief, the trial court allowed Henricks more time to prepare his case by adjourning early. Akin testified for the defense regarding blood spatter and rebutted Investigator Rossi's opinion.

There is nothing in the record to suggest that the State willfully withheld discovery. Almost a month before trial began, the State revealed in its motion for continuance that it was anticipating blood spatter testimony. At least fourteen days prior to trial, Investigator Rossi was listed as an expert witness in the area of crime scene investigation. The State also updated its discovery responses and gave Henricks access to the evidence in the case. During trial, Henricks stipulated to Investigator Rossi's expertise in the area of blood spatter. Further, in an attempt to remedy any surprise Henricks may have experienced, the trial court appointed a blood spatter expert for Henricks and allowed Henricks extra time, mid-trial, to prepare his expert. The State did not act in bad faith, and Henricks had sufficient notice to anticipate the blood spatter testimony.

The trial court did not err in allowing Investigator Rossi's PowerPoint presentation. The presentation was only an aid for the jury to understand Investigator Rossi's testimony. A witness may be allowed to demonstrate before the jury so as to make her testimony more plain and clear. *Phea v. State*, 190 S.W.3d 232, 234 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Her testimony consisted of complex blood spatter analysis, and the presentation was used as a visual aid to assist the jury while she testified. Henricks had access to all the photographs used in the presentation, and they had already been entered into evidence. Further, the PowerPoint presentation was not entered into evidence and was not available to the jury during its deliberations.

The trial court did not err in denying Henricks's motion for continuance. Henricks knew there would be testimony on blood spatter when the State filed its motion for continuance, almost two weeks before he filed his motion. Henricks had sufficient time to prepare for any testimony regarding blood spatter. Henricks's third, fourth, and fifth issues on appeal are overruled.

*In-Court Demonstration*

Henricks argues that the trial court erred in allowing Investigator Rossi to demonstrate her theory on how Robert was killed. The trial court has discretion whether to admit or exclude a demonstration. *Cantu v. State*, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987). The court abuses its discretion by allowing a demonstration if the facts in evidence do not show that the proposed demonstration was conducted under substantially similar circumstances and conditions to the event to which the demonstration relates. *Id.* A demonstration need not be made under identical conditions of the event. *Valdez v. State*, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989); *Wright v. State*, 178 S.W.3d 905, 919 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Dissimilarities in the demonstration to the actual event go to the weight to be given the evidence and not the admissibility of the evidence. *Wright*, 178 S.W.3d at 919.

After Investigator Rossi testified regarding the physical evidence observed and collected at the crime scene, the State asked Investigator Rossi if she had an opinion as to how the bullets entered and exited the body and if a demonstration would aid the jury in understanding her testimony. Henricks objected to the demonstration on the basis of surprise and for the reasons that it was outside the area of the witness's expertise and that the proper witness for that testimony was Dr. Patricia Moore, who performed the autopsy. The trial court asked to see the demonstration outside the presence of the jury. The demonstration was presented outside the presence of the jury, and Henricks again objected, stating that the demonstration was misleading and that there was no evidence regarding the trajectory of the bullets within the body. The trial court allowed the demonstration but gave this limiting instruction to the jury:

> Demonstrations of this nature are based upon the recreation of witnesses who are doing the demonstration, based upon what they feel they have learned from the crime scene or, et cetera. This is not an actual recreation of what happened. This is their opinion of what happened. And you need -- you are the ones who decide what weight to be given to the demonstration, if any.

11

Investigator Rossi testified that the angles used in the demonstration were approximate and that it was not done to scale. Investigator Rossi used different colored rods to represent each gunshot wound. Investigator Rossi positioned each rod to demonstrate her opinion as to the position of Robert's body at the time of each shot based on the entry and exit wounds.

The trial court did not abuse its discretion in allowing the demonstration. The demonstration was supported by facts in evidence. Investigator Rossi's testimony was based on her personal observations as well as her deductions from the evidence collected at the scene. Because Investigator Rossi gave extensive testimony regarding the physical evidence and made reasonable deductions from it, we find that the demonstration was substantially similar to the actual event as theorized by the State. Henricks's sixth issue on appeal is overruled.

*Deadly Weapon Finding*

Henricks argues that the trial court erred by sua sponte adding a deadly weapon finding to the judgment. A defendant is not eligible for community supervision when there is an affirmative finding that a deadly weapon was used or exhibited during the commission of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(I)(2) (Vernon Supp. 2008). Also, a defendant's eligibility for parole is affected by a deadly weapon finding. TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp. 2008); *Shankle v. State*, 119 S.W.3d 808, 813-14 (Tex. Crim. App. 2003). A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(17) (Vernon Supp. 2008).

The trial court may enter an affirmative finding in the judgment on the use of a deadly weapon when the indictment alleges use of a deadly weapon, the weapon is deadly per se, or the factfinder affirmatively answers a special issue on the use of a deadly weapon. *Polk v. State*, 693 S.W.2d 391, 394-95 (Tex. Crim. App. 1985). When the indictment specifically places the issue before the jury, then an affirmative finding is de facto made when the jury finds the defendant guilty as charged in the indictment. *Polk*, 693 S.W.2d at 394; *Barecky v. State*, 639 S.W.2d 943 (Tex. Crim. App. 1982). An affirmative finding will arise as a matter of law when the jury finds that a firearm was used in the commission of the offense because a firearm is a deadly weapon per se.

*Giles v. State*, 617 S.W.2d 690 (Tex. Crim. App. 1981); *Williams v. State*, 567 S.W.2d 507 (Tex. Crim. App. 1978); *Stewart v. State*, 532 S.W.2d 349 (Tex. Crim. App. 1976).

In this case, the trial court did not err in making the affirmative finding for the use of a deadly weapon. The indictment placed the issue before the jury by alleging that Henricks caused the death of Robert by shooting him with a firearm. The jury found Henricks guilty as alleged in the indictment. Therefore, the deadly weapon finding arose as a matter of law. The trial court did not err in entering a deadly weapon finding in the judgment. Henricks's seventh issue on appeal is overruled.

*Conclusion*

The judgment of the trial court is affirmed.

RICK STRANGE

JUSTICE

May 21, 2009

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

13