

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## NUMBER 13-09-00556-CR

THE STATE OF TEXAS,                                                    Appellant,

v.

JOSHUA HILD,                                                           Appellee.

## NUMBER 13-09-00557-CR

THE STATE OF TEXAS,                                                    Appellant,

v.

CALEB HILD,                                                            Appellee.

### On appeal from the 347th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION ON REMAND

## Before Justices Yañez,[1] Garza, and Benavides
## Memorandum Opinion on Remand by Justice Garza

The State of Texas challenges the trial court's orders granting pre-trial motions to suppress evidence and to strike a witness filed by appellees, Joshua Hild and Caleb Hild. We affirmed the orders on November 18, 2010, reasoning that the State had not shown that its substantial rights had been affected by the rulings because the suppressed evidence did not appear in the record. *State v. Hild*, Nos. 13-09-00556-CR & 13-09-00557-CR, 2010 Tex. App. LEXIS 9180, at *6 (Tex. App.—Corpus Christi Nov. 18, 2010, pet. granted) (mem. op., not designated for publication) (citing TEX. R. APP. P. 44.2(b)). The Texas Court of Criminal Appeals reversed and instructed us to reconsider in light of its ruling in *Chupik v. State*, No. PD-0960-10, 2011 Tex. Crim. App. LEXIS 824, at *13 (Tex. Crim. App. June 15, 2011) (holding that when the State appeals from a pretrial order granting a motion to suppress, there is no need for the record to reflect the content of the evidence that was suppressed). *See State v. Hild*, Nos. PD-0369-11 & PD-0370-11, 2011 Tex. Crim. App. LEXIS 1062 (Tex. Crim. App. Aug. 24, 2011) (per curiam) (mem. op., not designated for publication). We reverse and remand.

## I. BACKGROUND

On November 14, 2008, brothers Joshua and Caleb were jointly indicted on one count of murder. *See* TEX. PENAL CODE ANN. § 19.02 (West 2003). On January 9, 2009, Joshua's attorney filed a "Motion for Discovery and Inspection" as well as a "Motion to Produce Exculpatory and Mitigating Evidence" with the trial court. On March 26, 2009,

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, was a member of the panel at the time this case was originally submitted for decision, but did not participate in this opinion because her term of office expired on December 31, 2010. *See* TEX. R. APP. P. 41.1.

Caleb's attorney filed a similar "Motion for Discovery and Inspection" as well as a "Request for 404(b) Evidence and Punishment Phase Evidence Pursuant to Article 37.07 C.C.P. and Impeachment Evidence Under 609(f)." None of these motions were heard or ruled upon by the trial court.

On October 2, 2009, three days before appellees' trial was scheduled, assistant district attorney Frank Errico informed both defense attorneys of a DVD recording he had found in the State's case file. The recording featured a September 2008 statement by a "jail house snitch" named Frank Garcia, in which Garcia stated what Caleb had told him "out in the exercise yard."[2] Neither defense attorney was aware of the status of Garcia as a potential witness, or of the existence of the DVD recording, until they were informed by Errico three days before trial.[3]

Trial was set for October 5, 2009.[4] On that day, appellees moved for a continuance, noting that the State had just recently notified the defense of Garcia's recording and his status as a potential witness. Joshua's attorney explained to the trial court that he had just learned of Garcia's statement on October 2, 2009, despite receiving other discovery material from the State as recently as December of 2008. Caleb's attorney explained to the trial court:

---

[2] The record does not reveal the content of Caleb's alleged statement to Garcia.

[3] Additionally, on October 1, 2009, Errico informed the defense attorneys of a witness named Rene Piper, whose testimony was purportedly exculpatory as to Joshua. According to Joshua's attorney, Piper's name was not listed in any of the discovery materials that were provided to appellees before that time. Appellees moved for a continuance and then moved to strike Piper as a witness; the trial court denied the motion for continuance but did not rule on the motion to strike.

[4] The case was originally set for trial on January 20, 2009. On that date, the State and appellees agreed to a continuance until May 11, 2009. On May 11, the parties again agreed to a continuance, this time until August 17, 2009. On August 17, the parties agreed to a third continuance. The trial court, after consulting with the parties, then set a firm trial date for October 5, 2009.

What was happening is, we had continuing discovery. [Doug Mann, the prosecutor who had previously worked on the case,] handed us an [sic] initial discovery packets. We had an agreement if anything else came in, it was going to be delivered to us. He did deliver the [other] video, DVDs, sometime after the initial discovery of the statements of all the parties. Then he delivered photographs to us on one occasion, then he delivered the 911 tape. So he was continually delivering things. He just did not deliver the snitch from September . . . .

Errico represented to the trial court that the State had possession of the Garcia video since September of 2008. He further stated that he did not know what was previously given to defense counsel by Mann, but that "I told these guys [defense counsel] about [the video] as soon as I found it." Errico then noted that, although the State has an "open file policy," it is nevertheless "incumbent upon [defense counsel] to come look at our file." The trial court asked Errico whether the DVD recording of Garcia's statement was actually contained in the State's open file; Errico stated that he did not know.

The trial court then denied appellees' joint motion for continuance. Both defense attorneys then asked the trial court to suppress Garcia's statement and to strike him as a potential witness. The trial court granted the request, and the State appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West Supp. 2009) (permitting the State to appeal an order granting a defendant's motion to suppress evidence).

On July 28, 2010, we abated the instant appeals and instructed the trial court to enter findings of fact and conclusions of law with respect to its ruling. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ("[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall . . . make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts."). Such findings and

4

conclusions were filed with this Court on September 21, 2010. The findings of fact included the following:

> 11.    The State and Defendants had an agreement regarding discovery. The State gave Defendants initial discovery packets and agreed to deliver further discovery to Defendants as it came in. Further discovery was in fact delivered to Defendants from time to time. However, the statement of Frank Garcia was not in the initial discovery packet and it was not later produced to Defendants. . . .
>
> 12.    Defendants reasonably relied on the agreement with the State which provided that the State would produce all discovery as it was received by the State.
>
> 13.    The trial court was not unreasonable in expecting the State and Defendants to proceed to trial on October 5, 2009 which was 13 months after the incident in question and almost 11 months after the indictment was filed.

The trial court thus concluded that "[i]t was within [its] discretion . . . to sanction the State for its failure to disclose the video statement of Frank Garcia by striking, and ruling inadmissible, the testimony of Frank Garcia as a witness for the State."

## II. DISCUSSION

By its sole issue, the State contends that the trial court erred by granting appellees' motion to suppress Garcia's statement and to strike Garcia as a witness. We review such an order for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's conclusion and will reverse the judgment only if it is outside the zone of reasonable disagreement. *Id.*

The State has a constitutional duty to disclose exculpatory evidence to the defense, but has no general duty to disclose inculpatory evidence. *Rivera v. State*, 808

S.W.2d 80, 95 (Tex. Crim. App. 1991) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

However, article 39.14 of the Texas Code of Criminal Procedure provides that:

> Upon motion of the defendant showing good cause therefor and upon notice to the other parties, . . . the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies.

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2010).  Evidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence. *Henricks v. State*, 293 S.W.3d 267, 274 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002)).

Here, because the trial court never ruled on appellees' discovery motions, there was no order under article 39.14 compelling the State to notify appellees of Garcia's status as a potential witness or to disclose Garcia's statement.[5]  Nevertheless, Caleb's

---

[5] The Hilds argue that the mere filing of a motion to produce a witness list, by itself, triggers the State's obligation to produce such a list, regardless of whether the motion is actually granted by the trial court.  In support of this contention, the Hilds cite *DePena v. State*, 148 S.W.3d 461, 465 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989); *Beets v. State*, 767 S.W.2d 711, 747 (Tex. Crim. App. 1987)) ("Our law is clear that *upon request by the defense*, the State must disclose the witnesses who will be used at any stage of the trial." (emphasis added)), and *Henricks v. State*, 293 S.W.3d 267, 274 (Tex. App.—Eastland 2009, pet. ref'd) ("Upon defendant's request *or* a trial court's order, the State is required to disclose a list of witnesses it intends to use at trial . . . ." (emphasis added)).

Here, however, the Hilds did not direct a "request" for a witness list to the State as contemplated in *DePena* and *Henricks*; instead, they filed motions with the trial court asking for an order compelling the State to provide such a list.  As the court of criminal appeals has recognized:

attorney stated, and the trial court recognized in its findings of fact, that there was an agreement between the State and appellees whereby the State would provide additional discovery to the Hilds "[as it] came in."[6]  Without that agreement, appellees may have pursued their discovery motions to a ruling by the trial court.  Under such a scenario, had appellees shown good cause, the trial court would have been required to grant the motion and order the State to provide the requested materials, which included the names of potential witnesses.  *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (stating that, "[u]pon motion of the defendant showing good cause . . . the court . . . *shall order*" the prosecution to provide discovery (emphasis added)).  We therefore conclude that the trial court was within its discretion to conclude that the defendants "reasonably relied on the agreement . . . which provided that the State would produce all discovery as it was received . . . ."

---

> By nature, a discovery motion is addressed to the trial court, not the State, and it requests that the trial court order the State to produce evidence.  Often such motions are filed as a matter of standard procedure [and] may be utilized only as a last resort if the State does not cooperate in voluntarily turning over information or evidence in an informal setting.  A discovery motion is not otherwise productive until it is ruled upon by the trial court.
>
> . . . .
>
> While we may assume the State makes itself aware of the contents of a discovery motion, the State need not comply with requests contained in a discovery motion until the trial court orders it to do so.

*Espinosa v. State*, 853 S.W.2d 36, 38–39 (Tex. Crim. App. 1993).  In that case, the Court held that "when a defendant relies on a motion for discovery to request notice pursuant to [Texas Rule of Evidence] 404(b), it is incumbent upon him to secure a ruling on his motion in order to trigger the notice requirements of that rule."  *Id.* at 39.  The same reasoning applies here, and we conclude that the Hilds' mere filing of their motions did not, by itself, trigger the State's obligation to provide a witness list.

[6] The State does not deny the existence of such an agreement, but argues that "there is no indication in the record as to what exactly was covered by this amorphous 'agreement.'"  We disagree.  Caleb's attorney stated that "[w]e had an agreement if anything else came in, it was going to be delivered to us."  The trial court could have reasonably concluded, based on this statement, that the State agreed to provide "anything" discoverable to the defendants as it was received by the State.

7

We must next determine whether the trial court, having correctly found that the Hilds reasonably relied on the State's agreement to produce discovery materials, erred in excluding Garcia's statement and testimony entirely. Because exclusion of evidence is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution. *Henricks*, 293 S.W.3d at 274–75; *Osbourn*, 59 S.W.3d at 816. In determining whether the State acted willfully, we consider two factors: (1) whether the prosecutor acted in bad faith in failing to disclose the evidence and (2) whether the defendant could have reasonably anticipated the contested evidence. *Henricks*, 293 S.W.3d at 275 (citing *Wood v. State*, 18 S.W.3d 642, 649–50 (Tex. Crim. App. 2000); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992)). In evaluating whether the prosecutor acted in bad faith, we ask: (1) whether the defendant established that the State intended to deceive him; (2) whether the State's notice left the defendant adequate time to prepare; and (3) whether the State freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new witnesses. *Henricks*, 293 S.W.3d at 275; *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd). In determining whether the defense could have anticipated the State's witness, we consider the following: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise; and (3) the degree to which the trial court was able to remedy that surprise. *Henricks*, 293 S.W.3d at 275.

Consideration of two of the factors listed in *Henricks*—whether the defendant was left with adequate time to prepare and whether the State freely provided the defendant with information—weigh in favor of a finding of bad faith. The Hilds were

8

provided with information as to Garcia only three days before their joint murder trial was scheduled to begin. Further, while the burden may generally rest on defense counsel to take advantage of the State's "open file policy," the State specifically agreed in this case to provide appellees with any discovery as it was received. The record shows that the State failed to comply with that agreement. The record further suggests that the defendants had no way of knowing of Garcia's statement or of anticipating that Garcia would be a witness without the State so notifying them.[7] In other words, the State's failure to disclose Garcia as witness likely subjected the defendants to a significant degree of surprise. *See Henricks*, 293 S.W.3d at 275.

However, the Hilds do not contend that the prosecution intended to deceive them; rather, they appear to argue that this was an honest mistake by the State which, if not remedied, would have had the unintended effect of preventing them from adequately preparing for trial. The trial court did not explicitly find or conclude that the State acted willfully or in bad faith by failing to disclose Garcia's identity as a witness until three days before trial. The lack of a finding or conclusion by the trial court weighs strongly against a finding of willfulness or bad faith on the part of the prosecution. Additionally, the trial court could have easily remedied any surprise befalling the Hilds by granting a brief continuance.[8] *See id.*

---

[7] We acknowledge that, assuming Garcia's recorded statement is true, Caleb should have been able to anticipate Garcia's testimony because Caleb was the one who made the purportedly incriminating remarks to Garcia.

[8] The trial court contended in its conclusions of law that it was not unreasonable to expect the parties to proceed to trial on October 5, 2009, especially considering the fact that thirteen months had passed since the alleged murder took place and eleven months had passed since the indictment. However, there is no indication that any party would have suffered harm by the granting of an additional brief continuance to allow the Hilds to prepare for trial knowing that Garcia would testify.

9

Under these circumstances, viewing the record in the light most favorable to the judgment and applying the specific factors enumerated in case law, we find no willfulness on the part of the prosecution. Accordingly, the trial court's suppression of Garcia's statement and its striking of Garcia as a witness were abuses of discretion. *See Dixon*, 206 S.W.3d at 590. The State's issue is sustained.

## III. CONCLUSION

We reverse the trial court's judgments and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
20th day of October, 2011.

10