

## NUMBER 13-11-00682-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                      Appellant,

v.

WILFRED PADILLA,

Appellee.

### On appeal from the 197th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Benavides
### Memorandum Opinion by Justice Benavides

This appeal[1] arises from a motion to suppress evidence. By two issues, the

State of Texas argues that the trial court erred when it ordered two letters purportedly

---

[1] We acknowledge that we issued a notice of defect on this cause on October 26, 2011 because the State's notice of appeal failed to comply with Texas Rule of Appellate Procedure 9.5(e) regarding the certificate of service requirements. *See* TEX. R. APP. P. 9.5(e). Because we recognize the seriousness of the underlying offense and the fact that a jury has been selected and is awaiting the commencement of trial, and because we have confirmed that Padilla has received notice of the appeal, we address the merits of the appeal in the interest of judicial economy. *See* TEX. R. APP. P. 2 (providing that "on its own

written by the Appellee, Wilfred Padilla, to be excluded from evidence because: (1) the evidence is insufficient to support the trial court's finding that the State willfully violated the discovery order in this cause, and (2) the State notified the Defendant of the existence of said letters with adequate time before trial.[2] We affirm.

## I. BACKGROUND

Padilla is accused of capital murder. *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2010). Padilla's trial has been continued at least three times, with numerous pre-trial hearings on various evidentiary motions. On November 15, 2010, the trial court set December 10, 2010 as the final discovery deadline for the disclosure of various matters of discovery and specifically ordered that all physical evidence, including any letters allegedly written by Padilla, be made available or delivered to Padilla as soon as possible:

THE COURT:  I want a deadline. I want this case to proceed to trial. I want, you know, all of this stuff to be taken care of and not be brought to me at the last minute. . . . December the 10th [2010] deadline.

No written discovery order was signed by the judge.

On February 28, 2011, the State obtained two letters believed to have been written by Padilla. Instead of immediately sharing the letters with Padilla's counsel, the State first attempted to verify whether the letters were indeed written by Padilla. To do

---

initiative an appellate court may—to expedite a decision or for other good cause—suspend a rule's operation in a particular case . . . .").

[2] In his response brief, Padilla raises the issue of subject matter jurisdiction. Padilla contends that the trial court first excluded the letters on August 30, 2011, so the State should have filed its appeal twenty days after this ruling. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(d) (West Supp. 2010). However, we agree with the State that the final order on the motion to suppress was issued on October 26, 2011, which extended the appellate timetable. Thus, we conclude that we have jurisdiction over this appeal.

so, the State sent the letters to the Texas Department of Public Safety's (DPS's) Forensic Documents department. Assistant District Attorney Rigoberto Flores, Jr. testified at a hearing on October 21, 2011 that he received the returned letters from DPS on July 18, 2011, together with a response from a DPS handwriting expert indicating that no unqualified opinion could be made on whether Padilla wrote the letters due to poor penmanship. After the State decided to establish the authenticity of the letters through lay witnesses familiar with Padilla's handwriting, the State tendered them to the defense on August 23, 2011.

Padilla filed a motion to suppress the letters on August 25, 2011, contending that they should be excluded because they were not disclosed before the discovery deadline. The trial court granted Padilla's motion to suppress the letters. On October 28, 2011, the trial court made "Findings of Fact and Conclusions of Law Concerning the Defendant's Motion to Exclude Letters Written By the Defendant." We cite the entire order below:

## I. Relevant Procedural History

1.  The Defendant, Wilfredo[3] Padilla, stands accused of capital murder. The State of Texas is seeking the Death Penalty.

2.  On November 15, 2010 the Court heard the Defendant's Motion for Discovery and ordered specifically that all physical evidence, including any letters allegedly written by the Defendant be made available or delivered to the Defendant by December 10, 2010.

The following is an excerpt from the transcript of the November 15, 2010 pretrial hearing, Page 29, Line 5:

> [DEFENSE COUNSEL]: We would like to get copies of any statements of the defendant, oral statements, a synopsis of any oral statements he may have made, any

---

[3] Padilla is referred to as both "Wilfred" and "Wilfredo" in the record.

3

|                      | written statements, any tape recordings— |
|----------------------|------------------------------------------|
| THE COURT:           | You are entitled to that. |
| [DEFENSE COUNSEL]:   | Any letters. |
| THE COURT:           | I am sure they have given that to you. |
| [DEFENSE COUNSEL]:   | No they haven't, Your Honor. I mean, there is some tapes that they just— |
| THE COURT:           | Well, they are supposed to give that give—I will order them to give it to you. Next. |
| [DEFENSE COUNSEL]:   | By December 10th? |
| THE COURT:           | By December 10th. On everything the deadline will be December 10th. |
| [DEFENSE COUNSEL]::  | Letters, tapes of the defendants— |
| [THE STATE]:         | Your Honor— |
| THE COURT:           | December 10th. |

The Court had already advised the State with regard to the December 10, 2010 deadline that if any new evidence was discovered after December 10, 2010 the State was to bring it to the Court's attention, for the Court[']s review, to determine if it would be permitted at trial. See the transcript of the November 15, 2010 pretrial hearing, page 14, line 6.

3. On March 1, 2011 a pretrial hearing was held w[h]ere the Court was informed that the State had just tendered several CD's of audio recordings to the Defense, the Defense filed a motion for continuance. At that time the Court made known to the State of Texas its concerns about the timeliness of disclosures to the Defendant. See the transcript for the March 1, 2011 pretrial hearing beginning on page 35, line 22.

4. On March 25, 2011 an additional pre-trial hearing was held. The Court granted the Defense a continuance due to the State filing on March 15th and 16th a third and fourth amended designation/disclosure of numerous expert witnesses. The Court

4

again made known its concerns regarding the cost of continuance and the Court[']s desire not to grant any more continuances because of discovery related issues.  See the transcript of the March 25, 2011 Pretrial hearing beginning on page 13, line 3 and page 17, line 5.

5.    On August 23, 2011 the State of Texas tendered to defense counsel, for the first time, two letters (hereafter referred to as the Salazar Letters) allegedly written by the Defendant in jail.  (See Exhibit A).

6.    On August 25, 2011 the Defendant, through his attorneys, filed a written motion to exclude the Salazar letters.  (See Exhibit B).

7.    On August 29, 2011 this Court heard the Defendant's motion to exclude the Salazar letters[,] heard the arguments of counsel for the State, and for the Defendant.  On that date, this Court inquired of the State as to the length of time the prosecutors had been in possession of the Salazar letters.  Mr. Charles Mattingly requested 24 hours to determine how long the letters had been in the possession of the District Attorney's office.

The following is an excerpt from the official transcript of the hearing on August 29, 2011, Page 31, Line 3:

THE COURT:        I want to know when you received them.

[THE STATE]:       Yes, Your Honor.

THE COURT:        And that will make my determination.  If you received them a week before you handed them over that is one thing.  But if you had them in your possession for five or six months they will be struck.

8.    On August 30, 2011 Mr. Mattingly reported to the Court that the State had been in possession of the Salazar letters since February 28, 2011, or approximately six months before they were tendered to the Defendant.  The Court ordered them stricken from use during trial as a sanction against the State for violation of the Court[']s previous discovery order of November 15, 2010.

9.    On August 30, 2011 jury selection began and continued until October 13, 2011.

10. On October 20, 2011 the State filed a motion to reconsider the Court's prior ruling excluding the Salazar letters.

11. On October 21, 2011 the Court heard evidence and arguments concerning the State's motion to reconsider the order excluding the Salazar letters. The Court again ruled that the letters were to remain excluded and made a finding that the State's actions in delaying delivery of the letters to the Defense were a willful violation of a previous discovery order of the Court.

12. On October 24, 2011 the Court held an informal conference with counsel for both the Defense and State being present, but without the Defendant being present. A court reporter was present and a transcript of the informal meeting was made part of the record in this case. The Court then indicated that it wanted to reconsider its prior rulings on the exclusion of the Salazar letters, and set the matter for an additional hearing on October 26, 2011 so that the Defendant could be present and a new hearing on the matter could be had.

13. On October 26, 2011 the Court held a hearing again on the State's motion to reconsider, the Defendant was present and the Court after hearing the arguments of counsel again re-affirmed the prior decision to exclude the Salazar Letters.

## II. Findings of Fact

1. The Court clearly and unambiguously ordered the State of Texas to produce to the Defendant all letters and statements attributable to the Defendant before December 10, 2010.

2. The Court's order to produce letters and statements did not terminate on December 10, 2010, the State was also ordered to bring forth to the Court[']s attention any newly discovered letters and statements attributable to the Defendant as soon as the State became aware of them after the December 10, 2010 deadline.

3. The Salazar letters at present concern were in the possession of the State of Texas on or about February 28, 2011.

4. After the letters had come into the possession of the State two separate pre-trial hearings were held, one on March 1, 2011 and another on March 25, 2011. During both of those hearings the Defendant was concerned about discovery issues, and especially

6

[concerned that] the State was planning on producing relevant discoverable material at the last minute.

5. The Court made the State aware of the Court's concerns regarding discovery that had been ordered to be provided to the Defendant in a timely manner. The State's compliance with the November 15, 2010 discovery order was a major component of both pretrial hearings in March of 2011.

6. The state was already in possession of the Salazar letters during both of the March 2011 pretrial hearings, and **FAILED TO NOTIFY** either the Court or the Defendant that it had obtained the Salazar letters. The Court finds that such failure is inexcusable in light of the Defendant's and Court's repeated efforts to ensure that the Defense had received all of the necessary discovery.

7. The State did not produce them to the Defendant, or make the Court aware of them until August 23, 2011, or approximately seven [7] days prior to commencement of jury selection.

8. At a hearing on October 21, 2011 regarding the State's willful disregard of the Court's discovery order, the Cameron County District Attorney produced a young prosecutor, Mr. Rigoberto Flores Jr., as a witness for the State. Mr. Flores testified that the letters had been in the possession of the State since February 28, 2011. Mr. Flores further testified that he was not aware of any efforts to produce the Salazar letters to the Defendant prior to August 23, 2011. There was no evidence of mistake or negligence on the part of the State. The State offered no evidence that the failure to produce the letters was not an intentional willful disregard of the previous discovery order.

9. The Court, having presided over the pre-trial proceedings in this matter is very aware of the Defendant's concerns regarding discovery matters. The State had been admonished many times to produce those matters identified in the November 15, 2010 discovery hearing. It appears to the Court, after considering the demeanor of the prosecution, their arguments regarding their failure to produce the Salazar letters, and the evidence they presented on

October 21, 2011, that the State willfully violated the discovery order of November 15, 2010.

10.     The State's failure to provide the Salazar letters to the Defendant until the eve of trial constituted a willful disregard of the Court[']s order to produce letters and statements attributable to the Defendant. Such action also constituted a willful disregard of the Court[']s order to bring any such new evidence to the Court[']s attention as soon as it was discovered after the December 10, 2010 deadline.

11.     The State's argument that the failure to produce the Salazar letters was not a willful violation of the Court's discovery order is without merit and strains credulity beyond its reasonable limits.

[I]II. Conclusions of Law

The State's failure to produce the Salazar letters when they were first discovered by the State of Texas constituted a willful violation of the Court's discovery order sufficient enough to justify exclusion as a sanction against the State as described in *State v. La[R]ue*, 152 S.W.3d 95 (Tex. Crim. App. 2005).

(Emphasis in original).

The State subsequently filed this appeal.

## II. STANDARD OF REVIEW

"'Evidence willfully withheld from disclosure under a discovery order should be excluded from evidence.'" *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006) (quoting *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)). The standard of review when considering a trial court's decision to admit or exclude evidence is whether the decision was an abuse of discretion. *Id.* (citing *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993)). Unless the trial court's decision was outside the "zone of reasonable disagreement," an appellate court should uphold the ruling. *Id.* "When a trial judge makes findings of facts 'based on an evaluation of

credibility and demeanor,' an 'appellate court should show almost total deference' to those findings." *Id.* (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

In *Guzman v. State*, the Texas Court of Criminal Appeals further explained the deference we should afford trial courts in these matters:

> Our decision also is meant to reaffirm the long-standing rule that appellate courts should show almost total deference to a trial court's findings of fact especially when those findings are based on an evaluation of credibility and demeanor—i.e., in reviewing a trial court's ruling on an "application of law to fact question," the appellate courts should view the evidence in the light most favorable to the trial court's ruling.

*Guzman*, 955 S.W.2d at 89 (quoting *Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996)).

### III. ANALYSIS

### A. Issue One: Willful Violation of Discovery Order

By its first issue, the State contends that the evidence does not support the trial court's finding that the State "willfully" violated the discovery deadline. In support of its argument, the State cites *State v. LaRue*. 152 S.W.3d 95 (Tex. Crim. App. 2004). In *LaRue*, the trial court found that DNA evidence had been willfully withheld from the defense. *See State v. LaRue*, 108 S.W.3d 431 (Tex. App.—Beaumont 2003), *aff'd*, 152 S.W.3d 95. The court of appeals reversed the trial court's ruling to suppress the evidence, and the Court of Criminal Appeals affirmed, holding:

> While it is obvious that the prosecutor consciously chose this course of conduct, his actions were "willful" only with respect to the conduct itself. In other words, his choice to engage in conduct that, in effect, would violate the discovery order was voluntary. But we find no evidence in the record that, by his choice, he intended to violate the order or harm the defense.

*LaRue*, 152 S.W.3d at 97.

9

Because exclusion of evidence is an extreme solution, it should not be imposed absent willfulness on the part of the prosecution. *Henricks v. State*, 293 S.W.3d 267, 274–75; *Osbourn v. State*, 59 S.W.3d 809, 816 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002); *see also State v. Hild*, Nos. 13-09-00556-CR & 13-09-00557-CR, 2011 Tex. App. LEXIS 8356, at *12 (Tex. App.—Corpus Christi Oct. 20, 2011, no pet. h.) (mem. op., not designated for publication). In determining whether the State acted willfully, we consider two factors: (1) whether the State acted in bad faith in failing to disclose the evidence and (2) whether the defendant could have reasonably anticipated the contested evidence. *Henricks*, 293 S.W.3d at 275 (citing *Wood v. State*, 18 S.W.3d 642, 649–50 (Tex. Crim. App. 2000)). In evaluating whether the State acted in bad faith, we ask: (1) whether the defendant established that the State intended to deceive; (2) whether the State's notice left the defendant adequate time to prepare; and (3) whether the State freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new witnesses. *Henricks*, 293 S.W.3d at 275; *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd).

The State relies on statements made by its lead prosecutor, Charles Mattingly, to show that the failure to promptly turn over the letters was not willful or intentional. We note that at the August 29, 2011 hearing on the motion to suppress, Mattingly stated the following:

> Your Honor, we tendered these letters over to defense counsel on August 23rd. Myself, Chuck Mattingly, I was reviewing the file, Your Honor. I was going through the different letters—the different files that we have, everything, and getting ready for trial. I came across these two letters. I asked co-counsel whether or not these had been tendered to defense counsel just to make sure. We found out that they had not been tendered,

10

Judge. As an officer of the court, I will let you know it was not done in any way, shape, or form to delay the trial. It was a mistake on my part.

The trial court in the present case, however, specifically cited *LaRue* in its "Conclusions of Law" and found otherwise. The trial court concluded that: "the State's failure to produce the Salazar letters when they were first discovered by the State of Texas constituted a willful violation of the Court's discovery order sufficient enough to justify exclusion as a sanction against the State as described in *State v. Larue*, 152 S.W.3d 95 (Tex. Crim. App. 2005)." The trial court, being familiar with the history of the case, the parties involved, and the legal issues at stake, was in a better position to evaluate the State's representations. It specifically found that "it appears to the Court, after considering the demeanor of the prosecution, their arguments regarding their failure to produce the Salazar letters, and the evidence they presented on October 21, 2011, that the State willfully violated the discovery order of November 15, 2011."

In reviewing the record, we note that this is a seven-year-old case.[4] The trial court at numerous points during the pendency of the case admonished the State to turn over evidence as quickly as it was found in the interest of judicial efficiency. In addition, the testimony of Assistant District Attorney Rigoberto Flores Jr. confirmed that although the State possessed the letters since February 28, 2011, no efforts were made to produce them to the trial court, Padilla, or Padilla's counsel until August 23, 2011. The decision to wait until August to reveal the letters appeared to be a conscious choice to authenticate the letters before exchanging them, rather than an act of mistake or negligence. This decision was in violation of the trial court's order to immediately disclose any new evidence to the court and to Padilla's counsel.

---

[4] We are not aware of any Sixth Amendment concerns that Padilla may have raised in this regard.

11

Because our standard of review requires us to "show almost total deference" to the trial court's findings about the State's credibility and demeanor throughout the pretrial considerations of this case, we defer to the court's determination that the State acted willfully in withholding the letters. *See Guzman*, 955 S.W.2d at 89. The record is clear regarding the December 10, 2010 deadline. And, based on the findings of fact, the trial court's decision to exclude the letters appears to be within the "zone of reasonable disagreement" and is supported by the record. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). Thus, we hold that the trial court did not abuse its discretion. *See Oprean*, 201 S.W.3d at 726. We overrule the State's first issue.

## B. Issue Two: Adequate Time Before Trial

The State also argues that it gave Padilla sufficient notice of these letters in advance of trial. The State notes that it turned the letters over to the defense on August 23, 2001, and as of the date of this opinion, trial has not begun. The State contends that "a total of more than two months have elapsed since the date that the State provided notice of the letters in question."

We disagree with the State that two months represents adequate time for Padilla to prepare a defense with respect to these letters. We note that the State had from February 28, 2011 to July 18, 2011—nearly five months—to consult a handwriting expert to determine whether the letters were in fact written by Padilla. Ultimately, the DPS handwriting expert was unable to make a conclusive finding. The State instead now intends to rely on lay witness testimony to verify that Padilla wrote these letters. In contrast, Padilla only had seven days prior to voir dire and two months prior to trial to authenticate the letters.

12

Again, because we must "show almost total deference" to the trial court's findings of fact, we conclude that the trial court did not abuse its discretion in granting Padilla's motion to suppress the letters. *See Oprean*, 201 S.W.3d at 726. Based on the record, the trial court repeatedly voiced its concern over whether Padilla had enough time to prepare an adequate defense. The State was under the court's order to immediately disclose any new evidence to the court and to Padilla's counsel, and violated this order when it took six months to tender the letters at issue. We overrule the State's second issue.

## IV. CONCLUSION

Having overruled both of the State's issues on appeal, we affirm the trial court's order granting Padilla's motion to suppress.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of November, 2011.